## COLLINS v. UNION COMPRESS & WAREHOUSE CO., Inc., et al.*

### No. 14713.

Court of Appeal of Louisiana. Orleans.

Jan. 2, 1934.

J. C. Henriques and Harry M. Mayo, Jr., both of New Orleans, for appellants.

Alvin R. Christovich and Wm. J. Kearney, Jr., both of New Orleans, for appellee.

JANVIER, Judge.

Collins, a colored laborer, while employed by defendant and working in close proximity to a cotton press, received severe injuries to his right foot. A part of the press, in descending, struck his foot and mashed it, fracturing the first, or great, toe, and also the second and third toes.

The accident occurred on January 20, 1932. The bones were set and the foot was placed in a cast, in which it remained until February 17, 1932.

On March 18th Dr. Cato, who had been treating Collins, instructed him to attempt to use his foot. On April 16th the doctor reached the conclusion that the injuries had healed and he discharged Collins and ordered him to return to work. Collins did not do so, asserting that his foot still pained him. On May 27th he filed this suit, alleging that he believed himself to be totally and permanently disabled. He seeks a judgment for 65 per cent. of his weekly wages for a period of 400 weeks from the date of the injury, subject to a credit for such amounts as have been paid him during the term of admitted disability.

Defendant corporation and its insurer, New Amsterdam Casualty Company, which latter corporation was also made defendant, admit that plaintiff was employed and that the three toes mentioned were fractured, as alleged, and aver that compensation has been paid for the entire period of disability. Defendants further maintain that even if total disability has resulted, nevertheless recovery should be limited to 125 weeks, since, under subparagraph 7 of paragraph (d) of subdivision 1 of section 8 of Act No. 242 of 1928 (page 357), which is amendatory of the earlier Compensation Acts an employee who sustains the loss of a foot is entitled to compensation for only 125 weeks. Defendants maintain that plaintiff's recovery, at most, should be limited to the term during which they contend he would be entitled to receive weekly payments had he completely lost his foot, or lost the use thereof. Plaintiff's attorneys counter with the argument that, since the capacity to work has been affected, the nature of the injury is of no importance and that compensation should be paid under one of the paragraphs (a), (b), and (c) of subdivision 1 of section 8 of the statute, with the result that for injury to the toes resulting in permanent total disability to work the employee would be entitled to be awarded compensation for a period not exceeding 400 weeks.

In the district court judgment was rendered for plaintiff for $11.70 per week for a period of disability not in excess of 300 weeks, subject to a credit for the amount already paid, to wit, $146.25, and judgment was further rendered for medical expenses not in excess of $250. Defendants have appealed.

It is apparent that the district judge reached the conclusion that Collins was temporarily totally disabled and he, therefore, awarded compensation in accordance with paragraph (a) of subdivision 1 of section 8 of the Act of 1928, because under that section an injured person who is temporarily totally disabled is entitled to "sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks."

The previous rate of wages of plaintiff does not seem to be in dispute, and the only question left for our consideration is whether Collins, at the time of the trial below, had recovered from the effects of the injury to such extent as would permit of his returning to work, and, if so, the date on which that recovery had been completely effected.

Some time after the cast was removed from the injured foot, Dr. Cato, having reached the conclusion that Collins could return to work and that there was no reason for the continued pain of which he complained, called in consultation Dr. E. S. Hatch, a specialist in the treatment of bones, and Dr. Hatch made a complete examination of the foot and reached the conclusion to

which Dr. Cato had already come. It was not until after Dr. Hatch had corroborated Dr. Cato that the patient was discharged as cured.

On May 6th, which was after the discharge, Collins called upon Dr. J. Kelly Stone, who caused an X-ray photograph of the foot to be made. This photograph, though not made by Dr. Menville, an X-ray expert, was "read" by him, after which he reported that it:

"Shows fracture of the terminal Phalanx of big toe with good position; comminuted fracture of the second Phalanges of the second and third toes with fair position. Slight but no complete bony union of fracture of first toe. No evidence of bony union of fractures of second and third toes."

Dr. Stone reached the conclusion that at that time, May 6th, the toes had not completely united and that it was not possible for the injured foot to be used to any great extent.

The case was tried on October 31, 1932. On October 28th Dr. Stone made another examination of the foot, and in his testimony, taken out of court on that day, gave the following report of that examination:

"* * * I found that there is no bony crepitation at the side of the great toe, but there is slight stiffness of the inter-phalangeal manipulations; that the swelling is entirely subsided; and that I was unable to find any evidence of fracture in the third toe. There was, however, slight suspicion of non-healing in the second toe at the site of the fracture, more from hypomotility than from crepitation."

He was asked whether the condition which he found to exist on October 28th "would prevent him from doing his usual work, which requires him to stand continuously on his feet to bale cotton." He answered:

"I feel that before additional disabilities could be determined that it would be advisable to have the condition, or have the foot X-rayed to see what amount of improvement shows in the bony healing."

It thus appears that Dr. Stone, who is the medical expert relied upon by plaintiff, felt that at the time of the trial he could not positively state that there was continued disability and that he would not give a positive opinion on that point without the assistance of another X-ray examination. On the day on which he testified, which was October 28th, the same day on which he had made the examination, another such photograph was taken in his office and was again "read" by Dr. Menville. Dr. Menville's report on that photograph reads as follows:

"X-ray examination shows complete healing of all previous fractures. In fact, if we did not know that such fractures previously existed, I doubt that we would be able to see any evidence of their existence so well are they healed, also their position so good."

Dr. Stone was not re-examined with reference to this X-ray photograph, nor with reference to Dr. Menville's report.

Both Dr. Cato and Dr. Hatch were convinced that at the time the X-ray examination was made on October 28th the recovery of Collins had been complete and that there was nothing whatever in his condition to prevent his return to work. In fact, they were of the opinion that he should have resumed his labors several months sooner than that.

We now revert for the moment to the X-ray photograph which had been taken on May 6th and which, according to Dr. Cato, showed that there had been slight, but no complete bony union of the fracture of the first toe, and that there was no evidence of bony union of the fractures of the second and of the third toes. He stated, however, that even if the fractures of the second and of the third toes had not completely united, still Collins could have returned to work. His testimony on this point is as follows:

"Q. Assuming that he had no perfect union in the second or the third toes, would that disable him? A. Not in the slightest, in my opinion."

Dr. Hatch was shown the photograph of May 6th and his reading of it closely coincides with that of Dr. Cato. He said:

"This shows a firm union in the fracture of the first phalangeal of the great toe, and there is a question of whether he has any union in the second phalanx of the second or third."

He also expressed the view that whether or not there had been complete union in the fractures of the second and of the third toes was of no great importance and that so long as the first, or great, toe had returned to its normal condition, Collins would not have been disabled. Referring again to the X-ray photograph of May 6th Dr. Hatch said:

"A. * * * It shows the first one solid. We don't figure the other two at all.

"Q. Why not? A. Because they are not disabling at all."

All of the doctors agree that usually in the case of an injury such as Collins sustained recovery would be complete in from six to eight weeks. For instance Dr. Stone said:

"Q. Ordinarily, doctor, how long would you say it would take for fractures of this kind to heal completely, so as to permit the man doing the type of work Collins was doing? A. Under normal conditions, six to eight weeks."

Dr. Cato's testimony on this point was as follows:

"Q. Doctor, ordinary fractures, of the type that Collins sustained, how long a period of time would they disable a man? A. Six to eight weeks, at most."

In view of the finding of Dr. Stone and the

report of Dr. Menville made on the X-ray photograph taken on May 6th, and because of the admissions of Dr. Cato and Dr. Hatch that that photograph showed the possibility of nonunion at that time in the fracture of the second and third toes and because of Collins continually complaining of suffering, we are inclined to resolve the doubt in plaintiff's favor and, therefore, reach the conclusion that at the time of the discharge of Collins he had not recovered sufficiently to permit of his returning to work.

However, we are of the belief that at the time of the trial, or, to be more exact, at the time the later X-ray examination was made on October 28th, there had been a full and complete recovery. It is true that Collins continued to complain of pain and that his wife and the person from whom he rented his residence corroborated his statement as to his continued suffering, and it is also true that Dr. Stone was of the opinion that, even at that time, he could not do the constant laborious work, to which he had been previously accustomed. But Dr. Stone was unwilling to say that further disability could be definitely established without an X-ray examination, and the X-ray examination, when made, showed, according to Dr. Menville, the X-ray expert, not only that the three fractures had completely healed, but that they had so well healed and that the bones of the toes were in such good condition that, had he not known that there had been fractures, "I doubt that we would be able to see any evidence of their existence."

 As we have already stated, Drs. Cato and Hatch were well convinced that at that time there had been a complete recovery and that, in fact, months before, when the patient had been discharged, he could then have returned to work. Furthermore, we cannot overlook the fact that all of the doctors agree that such fractures should completely heal in from six to eight weeks, unless there is something in the patient's physical condition to delay recovery. Nothing of that kind was shown in this record. We feel, therefore, that Collins is entitled to compensation at the rate of 65 per cent. of his previous rate of pay from the date of the accident, towit, January 20, 1932, to and including October 28, 1932, subject to a credit for $146.25.

We also find that, since there is no dispute as to the rate of pay, the amount of weekly compensation should be $11.70.

Plaintiff is entitled to legal interest on the past-due installments. The first such past-due installment became due, as found in the district court, on April 17, 1932.

 The award made for medical expenses must be reversed. There is no evidence to show that any sum whatever was spent by plaintiff in securing the services of doctors, surgeons, or X-ray specialists to treat him. Such experts of that character as were employed were manifestly employed as witnesses.

No award is asked for expert witnesses and, since no proof is offered to show that any amounts have been paid for professional services, the award made for such services must be reversed.

It is, of course, unnecessary to discuss the question of whether or not, had there been a total, permanent disability, recovery should have been limited to 400 weeks, or to 125 weeks, because, during the period of disability, that disability was total and from and after October 28, 1932, plaintiff should have returned to work.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended so as to read as follows:

It is ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Henry Collins, and against the defendants, Union Compress & Warehouse Company, Inc., and New Amsterdam Casualty Company, individually and in solido, in the full sum of $11.70 per week, as compensation, beginning January 20, 1932, and running to and including October 28, 1932, subject to a credit of the sum of $146.25; with legal interest on each installment from the date of its maturity, the first weekly maturity being April 17, 1932. Defendants to pay costs in the district court and plaintiff to pay costs of appeal.

Amended and affirmed.